IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GUADALUPE RINCON,

        Petitioner,               No. CIV S-02-2647 RRB DAD P

     vs.

E. ROE, Warden,

        Respondent.         FINDINGS & RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his plea of no contest to first degree burglary and his admission of five prior felony convictions and one prior prison term.  He seeks relief on the grounds that: (1) his constitutional rights were violated in connection with his plea of no contest; (2) his trial counsel rendered ineffective assistance; and (3) his appellate counsel rendered ineffective assistance.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

BACKGROUND

        On June 12, 2000, an information was filed in the San Joaquin County Superior Court charging petitioner with first degree burglary, in violation of California Penal Code § 459.

1

(Respondent's Lodged Document 8, Clerk's Transcript on Appeal (hereinafter CT) at 16-22.)  It was also alleged that the offense was a serious and violent felony within the meaning of California Penal Code §§ 1927(c)(18), 667.5(c)(21) and 667.9(a); that petitioner had suffered six prior "strike" offenses within the meaning of California Penal Code §§ 1170.12(b) and 667(d); that petitioner had suffered five prior convictions, within the meaning of California Penal Code § 667(a); and that petitioner had served four prior prison terms, within the meaning of California Penal Code § 667.5(b).  (Id.)

On October 2, 2000, petitioner entered a negotiated plea of no contest to the charged offense of first degree burglary and admitted one "strike" prior, four prior serious felony convictions, and one prior prison term, in exchange for dismissal of all remaining allegations and a stipulated state prison sentence of 33 years.  (Id. at 65-66; Respondent's Lodged Document 9, Reporter's Transcript on Appeal (hereinafter RT) at 2-9.)  On December 21, 2000, petitioner moved to withdraw his plea of no contest.  (CT at 70-72, 75-82; RT at 10-23.)  Because of the possibility that his previously appointed counsel could be called as a witness, petitioner was appointed separate counsel solely for purposes of the motion to withdraw the no contest plea. (Id.)  The trial court denied petitioner's motion to withdraw his plea and sentenced petitioner to a determinate term of 33 years in accordance with the plea agreement.  (CT at 82-88.)

On February 2, 2001, petitioner, proceeding pro se, filed a notice of appeal in which he challenged the validity of his no contest plea.  (Id. at 89.)  Petitioner also filed a request for a certificate of probable cause which was denied on February 16, 2001.  (Id. at 90-91.)  On July 17, 2001, petitioner's appellate counsel filed an opening brief on appeal in the California Court of Appeal for the Third Appellate District.  (Respondent's Lodged Document 1.)  Therein, petitioner requested that the appellate court conduct its own independent examination of the record to determine whether there were any cognizable issues, in accordance with People v. Wende, 25 Cal. 3d 436 (1979).  (Id.)  The California Court of Appeal corrected a minor sentencing error related to the trial court's failure in orally pronouncing judgment to impose a

2

1   mandatory surcharge to the restitution fine, but otherwise affirmed petitioner's conviction and

2   sentence.  (Respondent's Lodged Document 2, Opinion.)   Petitioner did not file a petition for

3   review in the California Supreme Court.

4           On November 16, 2001, petitioner filed a petition for a writ of habeas corpus in

5   the California Supreme Court. (Respondent's Lodged Document 3.)  Therein, petitioner claimed

6   that his trial counsel provided ineffective assistance.  (Id.)  That petition was summarily denied

7   by order dated May 1, 2002.  (Respondent's Lodged Document 4.)

8           On December 11, 2002, petitioner filed a petition for a writ of habeas corpus in

9   this court.  On September 2, 2003, petitioner filed an amended petition.  By order dated

10  September 19, 2003, this court dismissed the amended petition with leave to file a second

11  amended petition following the exhaustion of state court remedies.

12          On December 17, 2003, petitioner filed a petition for a writ of habeas corpus in

13  the California Supreme Court.  Therein, he claimed that: (1) the trial court violated his right to

14  due process when it failed to hold a competency hearing to determine whether he was competent

15  to enter his plea of no contest, and when it denied his motion to withdraw his plea; and (2) he

16  received ineffective assistance of trial and appellate counsel.  That petition was summarily denied

17  by order dated October 13, 2004.

18          By order dated January 21, 2004, the district court had granted petitioner's motion

19  to stay these proceedings pending exhaustion of claims in state court.  On November 24, 2004,

20  this court granted petitioner's motion to lift the stay and this case was reopened.  On December 8,

21  2004, petitioner filed a third amended petition for a writ of habeas corpus, on which this case is

22  now proceeding.

ANALYSIS

23

24  I.  Standards of Review Applicable to Habeas Corpus Claims

25          A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

26  some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

3

1   861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

2   Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

3   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

4   Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

5   corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

6   (1972).

7           This action is governed by the Antiterrorism and Effective Death Penalty Act of

8   1996 ("AEDPA").  See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

9   1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

10  habeas corpus relief:

11              An application for a writ of habeas corpus on behalf of a
            person in custody pursuant to the judgment of a State court shall
12          not be granted with respect to any claim that was adjudicated on
            the merits in State court proceedings unless the adjudication of the
13          claim -

14              (1) resulted in a decision that was contrary to, or involved
            an unreasonable application of, clearly established Federal law, as
15          determined by the Supreme Court of the United States; or

16              (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
17          State court proceeding.

18  28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

19  Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

20          The court looks to the last reasoned state court decision as the basis for the state

21  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

22  court reaches a decision on the merits but provides no reasoning to support its conclusion, a

23  federal habeas court independently reviews the record to determine whether habeas corpus relief

24  is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

25  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

26  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

4

1    AEDPA's deferential standard does not apply and a federal habeas court must review the claim

2    de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

3    1167 (9th Cir. 2002).

4    II.  Petitioner's Claims

5         A.  Plea of No Contest

6               Petitioner claims that "he should have been allowed to withdraw his plea of no

7    contest based on incompetency;" "he was not allowed by the trial court to present substantial

8    evidence of his incompetence prior to judgment;" and "the trial court should have reassured itself

9    that [petitioner] was presently sane, suspended proceedings pending treatment." (Third

10   Amended Petition (hereinafter Pet.) at 5.)  It appears from a review of petitioner's allegations as a

11   whole that he is claiming: (1) his no contest plea was involuntary because he was not competent

12   to enter the plea; (2) the trial judge erred in failing to hold a competency hearing prior to

13   obtaining the plea; and (3) the trial court erred in denying his motion to withdraw his plea.  After

14   setting forth the applicable legal principles, these separate but related claims will be analyzed

15   below.[1]

16               As discussed above, petitioner raised all of the claims contained in the instant

17   petition for the first time in state collateral challenges to his conviction.  All of petitioner's

18   claims were summarily rejected by the California Supreme Court.  Because this court is

19   "presented with a state court decision that is unaccompanied by any ratio decidendi," an

20   _____

21       [1]  Respondent argues that petitioner's claims in this regard were not fully exhausted by
     petitioner in state court.  The exhaustion of available state remedies is a prerequisite to a federal
22   court's consideration of claims sought to be presented in habeas corpus proceedings.  See Rose v.
     Lundy, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b).  However, "[a]n application for a writ of
23   habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to
     exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  A federal
24   court considering a habeas petition may deny an unexhausted claim on the merits when it is
     perfectly clear that the claim is not "colorable."  Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir.
25   2005).  Notwithstanding petitioner's alleged failure to exhaust in state court all of the issues
     encompassed by petitioner's current claim challenging his no contest plea, this court will
26   recommend that habeas relief be denied on the merits of those claims for the reasons explained
     below.  Petitioner's claims are not "colorable" and he is therefore not entitled to habeas relief.

1    independent review of the record is required "to determine whether the state court clearly erred in

2    its application of controlling federal law."  Delgado, 223 F.3d at 982.  Accord Wilcox v. McGee,

3    241 F.3d 1242, 1245 (9th Cir. 2001).

4              A guilty plea must be knowing, intelligent and voluntary.  Brady v. United States,

5    397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969).[2]  "The voluntariness of

6    [a petitioner's] guilty plea can be determined only by considering all of the relevant

7    circumstances surrounding it."  Brady, 397 F.2d at 749.  In Blackledge v. Allison, 431 U.S. 63

8    (1977), the Supreme Court addressed the presumption of verity to be given the record of plea

9    proceeding when the plea is subsequently subject to a collateral challenge.  While noting that the

10   defendant's representations at the time of his guilty plea are not "invariably insurmountable"

11   when challenging the voluntariness of his plea, the Supreme Court stated that, nonetheless, the

12   defendant's representations, as well as any findings made by the judge accepting the plea,

13   "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn

14   declarations in open court carry a strong presumption of verity."  Id. at 74.  See also Marshall v.

15   Lonberger, 459 U.S. 422, 437 (1983) (plea presumed valid in habeas proceeding when pleading

16   defendant was represented by counsel); Little v. Crawford, 449 F.3d 1075, 1081 (9th Cir. 2006);

17   Chizen v. Hunter, 809 F.2d 560, 561 (9th Cir. 1986).  The record must affirmatively show that a

18   criminal defendant's guilty plea is intelligent and voluntary.  Boykin, 395 U.S. at 242-43.

19             Under Boykin, the record must reflect that a criminal defendant pleading guilty

20   understands, and is voluntarily waiving, his rights to the privilege against compulsory

21   self-incrimination, to trial by jury and to confront one's accusers.  395 U.S. at 243.  However,

22   specific articulation of the Boykin rights "is not the sine qua non of a valid guilty plea."  Wilkins

23

24             [2] Petitioner pled nolo contendere, or "no contest" to the charges against him.  Under
     California law, a plea of nolo contendere has the same effect as a plea of guilty in the context of
25   the criminal proceedings.  See, e.g., People v. West, 3 Cal. 3d 595 (1970).  Accordingly, federal
     constitutional principles governing guilty pleas apply to petitioner's claims.  Miller v. McCarthy,
26   607 F.2d 854, 856 (9th Cir. 1979).

1  v. Erickson, 505 F.2d 761, 763 (9th Cir. 1974).  Rather, if the record demonstrates that a guilty

2  plea is knowing and voluntary, "no particular ritual or showing on the record is required."

3  United States v. McWilliams, 730 F.2d 1218, 1223 (9th Cir. 1984).

4          The conviction of a legally incompetent defendant violates the Due Process

5  Clause of the Fourteenth Amendment.  Cooper v. Oklahoma, 517 U.S. 348, 354 (1996);

6  Cacoperdo v. Demosthenes, 37 F.3d 504, 510 (9th Cir. 1994).  The test for competency is

7  "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable

8  degree of rational understanding and has a rational as well as factual understanding of the

9  proceedings against him."  Godinez v. Moran, 509 U.S. 389, 396 (1993) (quoting Dusky v.

10 United States, 362 U.S. 402, 402 (1960)).  See also Miles v. Stainer, 108 F.3d 1109, 1112 (9th

11 1997) ("When analyzing competence to plead guilty, we look to whether a defendant has the

12 ability to make a reasoned choice among the alternatives presented to him.") (internal quotes

13 omitted); Douglas v. Woodford, 316 F.3d 1079, 1094 (9th Cir. 2003).  "In a habeas proceeding, a

14 petitioner is entitled to an evidentiary hearing on the issue of competency to stand trial if he

15 presents sufficient facts to create a real and substantial doubt as to his competency, even if those

16 facts were not presented to the trial court."  Deere v. Woodford, 339 F.3d 1084, 1086 (9th Cir.

17 2003) (quoting  Boag v. Raines, 769 F.2d 1341, 1343 (9th Cir. 1985).  See also Douglas, 316

18 F.3d at 1094.  A "good faith" or "substantial doubt" exists in this regard  "when there is

19 substantial evidence of incompetence."  Deere, 339 F.3d at 1086 (quoting Cuffle v. Goldsmith,

20 906 F.2d 385, 392 (9th Cir. 1990)).  The burden of establishing mental incompetence rests with

21 the petitioner.  Boag, 769 F.2d at 1343; McKinney v. United States, 487 F.2d 948, 949 (9th Cir.

22 1973) ("[W]hen the issue of the defendant's competency to stand trial is raised in a § 2255

23 motion, the burden is upon the defendant to prove that he was not mentally competent to stand

24 trial."); see also Cacoperdo, 37 F.3d at 510 (habeas petitioner bears burden of showing due

25 process violation).

26 /////

1        Whether a defendant is capable of understanding the proceedings and assisting

2  counsel depends on "evidence of the defendant's irrational behavior, his demeanor in court, and

3  any prior medical opinions on competence to stand trial." Drope v. Missouri, 420 U.S. 162, 180

4  (1975). None of these factors is determinative, but any one of them may be sufficient to raise a

5  reasonable doubt regarding competence. Id. Finally, the Due Process Clause requires a state trial

6  court to inquire into a defendant's competency sua sponte if a reasonable judge would be

7  expected to have a bona fide doubt as to the defendant's competence. Pate v. Robinson, 383 U.S.

8  375, 385 (1966); Blazak v. Ricketts, 1 F.3d 891, 893 & n.1 (9th Cir. 1993); Chavez v. United

9  States, 656 F.2d 512, 515-17 (9th Cir. 1981).

10        The state court record reflects that there was a full and complete colloquy between

11  the trial court and petitioner at the time he entered his plea. (RT at 4-8.) Petitioner answered in

12  the affirmative when asked by the trial court whether he had been provided enough time to "talk

13  the matter over" with his counsel. (Id. at 6.) Petitioner acknowledged that, by pleading no

14  contest, he understood that he would be giving up his rights to a jury trial or a court trial, the

15  right to confront the witnesses against him, the right to obtain witnesses for his defense and to

16  present evidence on his behalf, and the right against self-incrimination. (Id. at 4-5.) The trial

17  court also advised petitioner regarding the particulars of his sentence and the ramifications of his

18  plea. (Id. at 5-6.) Petitioner acknowledged that he also understood these matters. (Id.)

19  Moreover, petitioner stated that no-one had made any promises to him about his case, nor was

20  anyone "forcing" him to enter his plea. (Id. at 6.) Petitioner indicated he did not have any

21  questions he would like to ask. (Id. at 7.) Upon accepting his plea, the trial judge found that

22  petitioner "knowingly, intelligently, and voluntarily waived each and every one of his

23  constitutional rights and entered his plea of no contest and admitted the enhancements." (Id.)

24        Petitioner subsequently filed a  motion to withdraw his plea, in which he argued

25  that he was depressed "to the point of committing suicide" and "on psychotropic medication

26  when he entered his plea and was unable to understand the consequences of his actions in regards

1   to his plea of guilty." (CT at 71-72.) Petitioner testified at the hearing on the motion. (RT at

2   12.) He informed the court that he had tried to commit suicide "about a week" prior to the entry

3   of his no contest plea and that he "wasn't thinking right" because he "wasn't on [his]

4   medication." (Id.) Petitioner explained that before he was arrested he was taking Thorazine,

5   Lithium and Triazane for his psychiatric problems, but that the prison staff would only give him

6   Lithium. (Id. at 15-16.) For this reason, at that time he entered his plea he was only being given

7   one of the medications that he should have been taking. (Id. at 13.) When asked what was

8   "going on in [his] head mentally" at the time he entered his no contest plea, petitioner stated that

9   he was "out of whack," "couldn't think clear," and "just wanted to kill myself." (Id. at 13-14.)

10          When asked why he didn't tell the trial judge about his medications at the time he

11   entered his plea, petitioner stated that he just "didn't understand . . . what [he] was doing." (Id. at

12   16-17.) Petitioner stated that he "was just going with what my attorney said to do, to take the

13   deal." (Id. at 17.) Petitioner agreed that he remembered answering the questions the judge asked

14   him at the change of plea hearing, but he denied memory of any specific questions. (Id.)

15   Petitioner stated that he remembered "some parts of that day, but I don't remember everything."

16   (Id. at 18.) The trial judge informed petitioner that the transcript of the change of plea hearing

17   reflected "no hesitation, no indication of any confusion on your part, whatsoever." (Id. at 19.)

18          On cross-examination, petitioner stated that he had started "having problems"

19   when the jail stopped giving him all of his medications in September. (Id. at 20.) He agreed that

20   when he came to court on July 24, 2000 for his pretrial conference, he was told that his

21   "exposure was 54 years to life" and that the prosecutor was offering petitioner a "choice between

22   a determinant sentence of 33 years or another option of 25 years to life." (Id. at 20.) Petitioner

23   agreed that this same offer was extended to him when he came to court two weeks before his jury

24   trial date and again about one week later when he came to court again. (Id. at 21.) Petitioner

25   also agreed that he accepted the plea offer on the day he was to be assigned out for trial and that

26   he knew the offer was in existence for three months before he entered his plea. (Id.) When

9

asked why he didn't understand what was happening when he entered his plea, petitioner stated,

"I just – couldn't believe I took the plea.  I wanted to go to trial.  And I don't know, like I said, I

wasn't thinking clearly."  (Id. at 21-22.)  When asked whether his intention "all along" was to

enter into one of the plea deals being offered to him, petitioner stated he didn't know.  (Id.)

However, petitioner agreed that he discussed his "options" with his attorney every time he came

to court and that he never told his attorney he wanted to go to trial.  (Id. at 22-23.)

    The trial court denied petitioner's motion to withdraw his no contest plea, ruling

as follows:

> All right.  Thank you.  I don't have to hear any more.  This is
> nothing more or less than buyers remorse.  The motion to withdraw
> the plea is denied.  Mr. Rincon was perfectly aware of what was
> going on.  He exhibited no signs of not understanding the
> proceedings on the date in question.  That certainly is amplified by
> [the prosecutor's] questions, my questions, and most of all, the
> transcript of the plea.  So it's buyer's remorse.  The motion is
> denied.

(Id. at 23.)

    Pursuant to California Penal Code § 1368, a competency hearing is required when

the trial judge entertains and declares a doubt as to a defendant's competence to stand trial.[3]

---

  [3]  Section 1368 provides, in relevant part, that:

> (a) If, during the pendency of an action and prior to judgment, a
> doubt arises in the mind of the judge as to the mental competence
> of the defendant, he or she shall state that doubt in the record and
> inquire of the attorney for the defendant whether, in the opinion of
> the attorney, the defendant is mentally competent.  If the defendant
> is not represented by counsel, the court shall appoint counsel.  At
> the request of the defendant or his or her counsel or upon its own
> motion, the court shall recess the proceedings for as long as may be
> reasonably necessary to permit counsel to confer with the
> defendant and to form an opinion as to the mental competence of
> the defendant at that point in time.

> (b) If counsel informs the court that he or she believes the
> defendant is or may be mentally incompetent, the court shall order
> that the question of the defendant's mental competence is to be
> determined in a hearing which is held pursuant to Sections 1368.1

1   Here, petitioner has failed to demonstrate that the trial judge should have harbored a bona fide

2   doubt as to petitioner's competence at the time he entered his plea.  The record before this court

3   does not reflect any confusion on petitioner's part at the change of plea hearing, and the trial

4   judge recalled that petitioner "exhibited no signs of not understanding the proceedings on the

5   date in question."  (RT at 23.)  There is no record of any irrational behavior by petitioner and

6   there is no evidence that petitioner had previously been adjudged incompetent to stand trial or to

7   enter a plea.  Cf. Blazak, 1 F.3d at 897 (competency hearing should have been conducted where

8   state trial court had records explaining defendant's extensive history of mental illness and

9   previous adjudications of incompetency, and there was no finding of competency at the time of

10  defendant's trial); Chavez, 656 F.2d at 519 (evidentiary hearing required where petitioner had a

11  history of antisocial behavior and treatment for mental illness, demonstrated emotional outbursts

12  in court, had a previous psychiatric finding of insanity and there was an inference that petitioner

13  had not even attempted to plea bargain for a lesser sentence).  The record in this case simply does

14  not support petitioner's allegation that his constitutional rights were violated by the failure of the

15  trial court to order a competency hearing or to set aside his plea of no contest.

16          Nor does the record substantiate petitioner's contention that he was incompetent

17  to enter his plea.  Petitioner did not ask any questions at the change of plea hearing.  Rather, he

18  stated without apparent hesitation that he understood everything the trial court was telling him.

19  Further, there is no evidence that petitioner was acting irrationally at that time.  While the record

20  does support petitioner's assertion that he was taking medication at the time of the change of plea

21  hearing and that all but one of his prescriptions were being withheld by prison staff, these facts,

22  standing alone, are not dispositive of petitioner's claim in this regard.  "The mere fact that a

23  defendant took mood-altering medication is not sufficient to vitiate his plea.  There must be some

24

25          and 1369.  If counsel informs the court that he or she believes the
           defendant is mentally competent, the court may nevertheless order

26          a hearing.  Any hearing shall be held in the superior court.

1   evidence that the medication affected his rationality." <u>Sturgis v. Goldsmith</u>, 796 F.2d 1103,

2   1109-10 (9th Cir. 1986) (failure to present evidence of medication petitioner was taking or "how

3   [the medication] might have affected his competence at trial" also failed to raise a bona fide

4   doubt as to the petitioner's competency to stand trial); <u>United States v. Williams</u>, 998 F.2d 258,

5   267 (5th Cir. 1993) ("Even if true, the bare allegation that he has seen a psychiatrist and taken

6   psychotropic medication, without more, would not suffice to establish reasonable grounds to

7   believe that Williams might be so mentally compromised as to be unable to understand trial

8   proceedings or to assist in his own defense."). There is no evidence that the medications

9   petitioner was taking, or the lack of any specific medication, rendered him unable to understand

10  the proceedings or to assist his lawyer. Indeed, the medication petitioner was taking was

11  apparently designed to improve his cognitive state. <u>See</u> <u>United States v. Buckley</u>, 847 F.2d 991,

12  999 (1st Cir. 1988) (record supported conclusion that the medication defendant claimed had

13  impacted his ability to voluntarily plead guilty in fact was designed to make the defendant more

14  rational). In addition, the record before this court indicates that petitioner was aware of the plea

15  offer long before his medications were discontinued. Finally, petitioner informed the trial court

16  that he deliberately accepted the plea on the advice of his attorney, further indicating that the plea

17  was intelligent and voluntary.

18          There is also no evidence that any person present at the proceedings perceived that

19  petitioner was suffering ill effects from his medications or was otherwise unable to comprehend

20  the proceedings. No party raised a question as to petitioner's competency during the change of

21  plea hearing.[4] <u>See</u> <u>Medina v. California</u>, 505 U.S. 437, 450 (1992) ("defense counsel will often

22

23          [4] Petitioner states that his appointed attorney, Mr. Burlington, "asked the trial judge to
24  grant the withdraw plea request. Doubting petitioner's sanity and told the trial court this
    information." (Traverse at 10.) To the extent that petitioner is contending Mr. Burlington
25  expressed a doubt as to petitioner's sanity at the time of his change of plea or at any other time,
    he has failed to substantiate any such contention. The record before this court contains no
26  evidence that Mr. Burlington ever expressed a doubt as to petitioner's competence to enter his no
    contest plea.

1   have the best-informed view of the defendant's ability to participate in his defense"); United

2   States v. Lewis, 991 F.2d 524, 528 (9th Cir. 1993) (a defense counsel's silence on the petitioner's

3   competency is some evidence that the petitioner showed no signs of incompetence at that time);

4   Hernandez v. Ylst, 930 F.2d 714, 718 (9th Cir. 1991) ("[w]e deem significant the fact that the

5   trial judge, government counsel, and Hernandez's own attorney did not perceive a reasonable

6   cause to believe Hernandez was incompetent"); United States v. McKoy, 645 F.2d 1037, 1039

7   (D.C. Cir. 1981) (district court did not abuse its discretion in refusing to allow a defendant who

8   was taking anti-anxiety medication to withdraw his guilty plea where the court had the

9   opportunity to personally observe defendant).

10          Under the circumstances presented here, petitioner has failed to demonstrate that

11   he was incompetent to enter his plea or that the trial judge should have conducted a competency

12   hearing prior to the entry of the plea.  Petitioner has also failed to demonstrate that the trial court

13   erred in denying his motion to set aside his plea.  The decision of the California Supreme Court

14   rejecting petitioner's claims in this regard is not contrary to or an unreasonable application of

15   federal law.  Accordingly, petitioner is not entitled to habeas relief with respect to this claim.

16          B.  Ineffective Assistance of Trial Counsel

17          Petitioner claims that attorney John Panerio, who filed and argued petitioner's

18   motion to withdraw his no contest plea, rendered ineffective assistance of counsel because of his

19   failure to investigate and present evidence to the trial court that would have demonstrated

20   petitioner was incompetent to enter his plea.  (Pet. at 5 & Ex. A.)  Specifically, petitioner claims

21   that Mr. Panerio should have called James Burlington, the attorney who negotiated petitioner's

22   plea bargain, as a witness to testify that petitioner had an extensive psychiatric medical history,

23   including diagnoses of "Schizophrenia and Bi Polar Disorder and Epilepsy," and that petitioner

24   had recently attempted suicide.  (Pet., Ex. A at 1.)  Petitioner also contends that Mr. Panerio

25   refused to provide the trial court with evidence from Sheriffs Deputies, who had observed

26   petitioner's "bizarre behavior;" from San Joaquin County Jail medical staff regarding petitioner's

13

1   psychiatric history; and from petitioner's family members.  (Id.)  In the traverse, petitioner claims

2   that Mr. Panerio should have: "(1) objected, (2) motion for competency hearing in a Penal Code

3   § 1367-1368, (3) withdraw his plea, (4) preserve the matter for appeal, (5) stated all he was aware

4   of."  (Traverse at 11.)

5           The Sixth Amendment guarantees the effective assistance of counsel.  The United

6   States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

7   Strickland v. Washington, 466 U.S. 668 (1984).  The benchmark for assessing claims of

8   ineffective assistance of counsel is "whether counsel's conduct so undermined the proper

9   functioning of the adversarial process that the trial cannot be relied on as having produced a just

10  result."  Nunes v. Mueller, 350 F.3d 1045, 1051 (9th Cir. 2003) (quoting Strickland, 466 U.S. at

11  686).  A petitioner must first show that, considering all the circumstances, counsel's performance

12  fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 687-88.  After a

13  petitioner identifies the acts or omissions that are alleged not to have been the result of

14  reasonable professional judgment, the court must determine whether, in light of all the

15  circumstances, the identified acts or omissions were outside the wide range of professionally

16  competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a

17  petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland,

18  466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

19  counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

20  694.  A reasonable probability is "a probability sufficient to undermine confidence in the

21  outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981

22  (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

23  deficient before examining the prejudice suffered by the defendant as a result of the alleged

24  deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

25  sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955

26  (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

14

1    In assessing an ineffective assistance of counsel claim "[t]here is a strong

2    presumption that counsel's performance falls within the 'wide range of professional assistance.'"

3    Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There

4    is in addition a strong presumption that counsel "exercised acceptable professional judgment in

5    all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

6    Strickland, 466 U.S. at 689).

7    Petitioner has failed to demonstrate either deficient performance or prejudice with

8    respect to his claim of ineffective assistance of counsel with respect to the motion to withdraw

9    his no contest plea.  The record reflects that attorney Burlington was present and available as a

10   potential witness at the hearing on the motion to withdraw petitioner's plea.  (RT at 11.)  Mr.

11   Panerio, who had been appointed by the court to represent petitioner in connection with the

12   motion, chose not to call attorney Burlington to the witness stand.  This court must presume that

13   Mr. Panerio exercised acceptable professional judgment in making this decision.[5]  Indeed,

14   counsel's tactical decisions are "virtually unchallengeable."  Strickland, 466 U.S. at 687.

15   Petitioner has also failed to establish that any additional witnesses or documents would have led

16   to a different result with respect to his motion to withdraw his no contest plea.  As explained

17   above, the fact that petitioner had a history of mental illness and that he takes psychotropic

18   medication does not necessarily establish that he was unable to enter a knowing and intelligent

19   no contest plea.  On the contrary, the record reflects that petitioner entered his plea knowingly

20   and voluntarily.

21   The conclusion of the California Supreme Court that petitioner was not deprived

22   of the effective assistance of counsel in connection with his motion to withdraw his plea is not

23

24        [5]  Attorney Panerio's decision not to call attorney Burlington to the stand is not at all

25   surprising since it is unlikely that Burlington could have provided any testimony that would have
     supported petitioner's attempt to withdraw his plea.  As noted above, Burlington never expressed

26   any doubt as to petitioner's competence to enter his plea.  A reasonable assumption is that he
     harbored no such doubt and would have so testified.

1  contrary to or an unreasonable application of Strickland.  Accordingly, petitioner is not entitled to

2  relief on this claim.

3          C.  Ineffective Assistance of Appellate Counsel

4                  Petitioner next claims that his appellate counsel rendered ineffective assistance

5  because of his failure to raise on appeal an issue related to petitioner's incompetence to enter his

6  no contest plea.  (Pet. at 5.)  Petitioner notes that the issue of his competence was "fully litigated

7  on the record in the superior court by written motion, oral testimony and argument."  (Id.)

8  Petitioner states that appellate counsel:

9              was presented with evidence of petitioner's incompetence as
              petitioner sent him all available medical records establishing his
10             medical and physical/mental condition, but he failed to bring these
             issues up to the third District Court of Appeal.  On the face of the
11             record an abuse of discretion was shown and his failure to order a
             determination of ineffective assistance of trial counsel,
12             incompetency at the time of the plea negotiations resulted in a
             miscarriage of justice and a reversal is required.

13

14  (Pet., Ex. B.)  As described above, petitioner's appellate counsel filed a "Wende" brief in which

15  he raised no issues on appeal but requested that the appellate court conduct an independent

16  examination of the record.

17                  The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

18  v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

19  However, an indigent defendant "does not have a constitutional right to compel appointed

20  counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

21  professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751

22  (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

23  ability of counsel to present the client's case in accord with counsel's professional evaluation

24  would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

25  Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

26  not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

1  meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

2  showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

3  to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this

4  context, petitioner must demonstrate that, but for appellate counsel's errors, he probably would

5  have prevailed on appeal.  Id. at 1434 n.9.

6         As described above, petitioner filed a pro se notice of appeal and request for

7  certificate of probable cause to challenge the validity of his plea.  (CT at 89-90.)  The request for

8  certificate of probable cause was summarily denied by the California Superior Court.  (Id. at 91.)

9  Petitioner's appellate counsel subsequently filed an application to expand his appointment to

10 include the preparation of a petition for writ of mandate seeking to compel the Superior Court to

11 issue a certificate of probable cause, so that counsel could challenge the validity of petitioner's

12 plea of no contest on appeal.  (Traverse, Ex. G.)  Appellate counsel's application in this regard

13 was apparently denied, and counsel subsequently filed his Wende brief.  It therefore appears from

14 the record presented to this court that appellate counsel attempted to raise a challenge to the

15 validity of petitioner's plea but was prevented from doing so by the state appellate court's

16 application of state procedural rules.  Under these circumstances, appellate counsel's failure to

17 successfully raise an issue on appeal related to the validity of the no contest plea did not fall

18 below an objective standard of reasonableness.

19        In any event, as discussed above, petitioner's claims challenging his plea of no

20 contest lack merit.  Accordingly, petitioner has failed to establish that he was prejudiced by the

21 fact that appellate counsel was unsuccessful in attempting to raise a challenge to petitioner's no

22 contest plea on appeal.  Miller, 882 F.2d at 1434 n.9.

23                           CONCLUSION

24        For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

25 application for a writ of habeas corpus be denied.

26 /////

17

1      These findings and recommendations are submitted to the United States District

2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

3  days after being served with these findings and recommendations, any party may file written

4  objections with the court and serve a copy on all parties.  Such a document should be captioned

5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6  shall be served and filed within ten days after service of the objections.  The parties are advised

7  that failure to file objections within the specified time may waive the right to appeal the District

8  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9  DATED: November 19, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
rincon2647.hc

18